1
2
3
4
5
6
7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
8
9
DAVID E. HECKERMAN and SUSAN B.
HECKERMAN,

Plaintiffs,
10
CASE NO. C08-0211-JCC
11
v.
ORDER
12
UNITED STATES OF AMERICA,
13
Defendant.
14
15
This matter comes before the Court on cross-motions for summary judgment: Defendant's

16
Motion for Summary Judgment on the Issue of Indirect Gift (Dkt. No. 11), Plaintiffs' Response in

17
opposition (Dkt. No. 17), and Defendant's Reply (Dkt. No. 21); and Plaintiffs' Motion for Partial

18
Summary Judgment on the Issue of "Indirect Gift" (Dkt. No. 26), Defendant's Response in opposition

19
(Dkt. No. 28), and Plaintiffs' Reply (Dkt. No. 29). The Court has carefully considered these documents,

20
their supporting declarations and exhibits, and the balance of pertinent materials in the case file. Having

21
determined that oral argument is not necessary, the Court finds and rules as follows.

22
**I.    BACKGROUND**

23
Plaintiffs bring this action to recover monies paid to the Internal Revenue Service ("IRS") in the

24
amount of $511,497.56 each, arguing that they are entitled to such refunds because the IRS improperly

25
26
ORDER – 1

treated certain transactions as "indirect gifts" to Plaintiffs' children, thus triggering the federal gift tax. (Compl. ¶¶ 24, 25 (Dkt. No. 1); Explanation of Adjustments (Dkt. No. 12-38 at 4).) The pertinent facts are as follows.

In the Fall of 2001, Plaintiff David Heckerman sought the advice of several legal and financial planning advisors to come up with a plan for passing along property to his two minor children—aged five and two at the time—that would both make his children "work for their money," (D. Heckerman Dep. 18:20–19:7 (Dkt. No. 12-3 at 5–6)), and "not trigger a gift tax." (*Id*. at 76:2–3 (Dkt. No. 12-3 at 23).) Eventually, his professional advisors proposed a plan that involved creating an LLC entity, transferring property and cash to the LLC, and then transferring to the children's trusts minority shares of the LLC. Theoretically, the gifting of minority shares of the LLC to the children would provide a tax advantage over gifting the underlying securities outright because the fair market value of a minority interest in an LLC is discounted such that, under certain circumstances, no gift tax is assessed.

Following their advisors' guidance, on November 28, 2001, the Heckermans established trusts for their children. (J.H. Trust Agreement (Dkt. No. 12-15); R.T.H. Trust Agreement (Dkt. No. 12-16).) The Trust Agreements appointed Edward Mark Heckerman, Mr. Heckerman's brother, and Susan Bruska, Mr. Heckerman's sister-in-law, as trustees. (*Id*.) The Trust Agreements state that they were executed as of November 28, 2001. (*Id*.)

That same day, November 28, 2001, the Heckermans formed three corporate entities: Heckerman Investments, LLC ("Investments LLC"); Heckerman Real Estate LLC ("Real Estate LLC"); and Heckerman Family LLC ("Family LLC"), an umbrella LLC that solely owned Investments LLC and Real Estate LLC. (Compl. ¶¶ 6, 7 (Dkt. No. 1); Certificates of Formation (Dkt. Nos. 12-10, 12-11, 12-12).) The State of Washington issued Certificates of Formation to each of those LLCs on December 21, 2001. (Certificates of Formation (Dkt. Nos. 12-10, 12-11, 12-12).) At that time, Plaintiffs owned all of the LLC units of Family LLC. (Compl. ¶ 7.)

Next, Plaintiffs began to fund the LLCs. On December 28, 2001, the Heckermans transferred

ORDER – 2

ownership of a $2.05 million beach house in Malibu, California, to Family LLC, and from Family LLC to Real Estate LLC. (Quitclaim Deed (Dkt. No. 12-18); Quitclaim Deed (Dkt. No. 12-19); D. Heckerman Dep. 79:5–80:13 (Dkt. No. 12-3 at 24–25).) Plaintiffs still owned all of the units of Family LLC, which in turn owned Real Estate LLC.

On Friday, January 11, 2002, Plaintiffs transferred $2.85 million in mutual funds from their personal investment account with Charles Schwab and Co., Inc., to Investments LLC. (Pls.' Mot. 5–6 (Dkt. No. 26); Schwab Account Statement for Investments LLC (Dkt. No. 12-23 at 5).)

Plaintiffs also transferred 1,217.65 units in Family LLC to each of their children's trusts. (Assignment to R.H. (Dkt. No. 12-22 at 2); Assignment to J.H. (Dkt. No. 12-22 at 3).) The signed gift documents state that the assignments are "effective on January 11, 2002." (*Id.*) They also state that the assignments were executed on January 11, 2002. (*Id.*) Mr. Heckerman received the unsigned gift documents from his attorney on January 11, 2002, at 8:51 a.m. via email attachment. (Dkt. No. 12-24.) In addition, the Heckermans provided the IRS with a document entitled "Admission to Heckerman Family Limited Liability Company as Substituted Member," which states that the children's trusts "have been admitted to the Limited Liability Company as Members with respect to the Interests assigned to them, effective January 11, 2002." (Dkt. No. 12-27 at 2.) That document sets out the "total interests owned by all Members as of January 11, 2002," and shows that the children's trusts each own minority interests of just under 50% in Family LLC. (*Id.*)

Yet Plaintiffs contend in this litigation that their gifts of LLC units to the children's trusts were "subsequent" to the cash transfer to Investments LLC on January 11, 2002. (Compl. ¶ 10 (Dkt. No. 1 at 2); Pls.' Mot. 6 (Dkt. No. 26).) To support this contention, Mr. Heckerman's declaration states that:

> While I do not have a specific recollection of the exact date that my wife and I executed the documents, I ordinarily handled personal affairs during the weekends. . . . I am reasonably certain that my wife and I waited until the weekend (January 12 and 13, 2002), or the following weekend (January 19 and 20, 2002) to execute the documents.

(D. Heckerman Decl. ¶ 10 (Dkt. No. 20 at 2).) However, in his deposition testimony, Mr. Heckerman

ORDER – 3

concedes that it is possible he executed the documents on January 11, 2002:

> A:     Yeah, it would have been extremely unlikely for me to have executed this on this day.
> Q:     But it's probable, isn't it?
> A:     Not probable.
> Q:     Is it possible?
> A:     Yes, if by "possible" you mean the probability is greater than zero percent.

(D. Heckerman Dep. 99:2–8 (Dkt. No. 12-3 at 30).) Mrs. Heckerman has no recollection of when she signed the documents. (S. Heckerman Dep. 19:9–25 (Dkt. No. 12-14 at 10).) After the Heckermans signed the LLC assignment documents, they sent copies of them by mail to the trustees. (D. Heckerman Decl. ¶ 11 (Dkt. No. 20 at 2).)

The Heckermans hired Mark Wellington of Private Valuations, Inc. ("PVI") to provide a valuation of the LLC units transferred to the children's trusts. (12/10/01 Email from Wellington to Fitzwilson et al. (Dkt. No. 12-28 at 2).) In a preliminary email to Plaintiffs' financial advisor carbon copying Mr. Heckerman, Wellington explains that the information he needed to complete the valuation included "the valuation date (typically the gift transfer date)." (*Id*.) On January 24, 2002, Wellington emailed a draft copy of PVI's valuation to Mr. Heckerman and his advisors, in which the valuation date was January 11, 2002. (1/24/02 Email (Dkt. No. 12-31 at 2–3).) Wellington specifically called attention to the fact that he had used that valuation date. (*Id*.) The final appraisal report, dated February 6, 2002, states that the "valuation is made on a minority interest, going concern basis as of January 11, 2002 to serve as a valuation basis for gift transactions on the same date." ("Heckerman Family L.L.C. Appraisal Report as of January 11, 2002" (Dkt. No. 12-32 at 2–3).) In the appraisal report, PVI opined that the fair market value of each child's minority interest in Family LLC was $511,000, for a total gift by each Plaintiff to the children of $1,022,000. (*Id*.) In determining this fair market value, PVI considered the price at which the LLC units would change hands between a hypothetical willing buyer and willing seller. (*Id*. at 8.) Appraising the value of the gifts to the children in this way resulted in significant discounts from the fair market value of the underlying assets owned by Family LLC. (Pls.' Mot. 8 (Dkt.

ORDER – 4

No. 26).)

On October 9, 2003, the IRS received Plaintiffs' separate Form 709 Gift Tax Returns. (Dkt. Nos. 12-33, 12-34.) Both Gift Tax Returns reported the date of the gifts of LLC units to the children's trusts as January 11, 2002. (Dkt. Nos. 12-33 at 10, 12-34 at 10.) The tax returns reflected a 58% discount for lack of marketability of the LLC units, or a $706,650 discount, for each gift. (*Id*.) Based on that discount, the returns reflected that no gift taxes were due. (*Id*. at 2.)

In 2005, the IRS began an audit of the Heckermans' gift tax returns and ultimately concluded that the proper value of each gift was $1,001,512 and not $511,000. (Explanation of Adjustments (Dkt. No. 12-38 at 4).) The IRS determined that:

> David and Susan Heckerman's transfer of $2,850,000 in cash to Invest[ments] LLC on January 11, 2002, was really an indirect gift of the proportionate amount of cash (24.85%) to each child's trust. The cash was not an asset of Invest[ments] LLC when Family LLC units were transferred to each child's trust (the fair market value of each gift is 24.85% of $2,580,000 or $708,225).

> Alternatively, their transfer of cash to Invest[ments] LLC and their transfer of Family LLC units on the same day, were merely part of an integrated transaction intended to pass cash to their children in a tax advantaged form. The indirect gifts are equal to transfers of $708,225 to each trust. The gift tax applies to gifts indirectly made. Thus, any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed, constitutes a gift subject to tax. Treas. Reg. 25.2511-1(c)(1).

(*Id*.) Plaintiffs paid the additional tax and filed claims for refunds and requests for abatement, asserting that they were entitled to refunds of $511,497.56 each. (Claims for Refund (Dkt. Nos. 1-2 at 1, 1-3 at 1).) The claims were denied. (Def.'s Mot. 11 (Dkt. No. 11).) This litigation followed.

## II.    APPLICABLE LAW

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W.*

ORDER – 5

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party

bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then

the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See*

*T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to

a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but

must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary

judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992);

FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of

material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323–24 (1986).

Where the moving party bears the ultimate burden of proof at trial, he must affirmatively put

forth evidence that would satisfy his burden of proof at trial. STEPHEN S. GENSLER, FEDERAL RULES OF

CIVIL PROCEDURE: RULES AND COMMENTARY 777 (2008). The nonmoving party can defeat summary

judgment with fact assertions that create a genuine dispute as to any essential element of the moving

party's claim. *Id*. In addition, "a taxpayer in a refund suit . . . has the burden to prove overpayment of

tax." *Watts v. United States*, 703 F.2d 346, 348 (9th Cir. 1983). A tax refund "claim must be

substantiated by something other than tax returns, uncorroborated oral testimony, or self-serving

statements." *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985) (*citing Lunsford v. Comm'r*,

212 F.2d 878, 883 (5th Cir. 1954); *Griffin v. United States*, 588 F.2d 521, 530 (5th Cir. 1979); *Gibson v.*

*United States*, 360 F.2d 457, 462 (5th Cir. 1966)).

**B.    Taxation of Gifts and Indirect Gifts**

**1.    Generally**

The Internal Revenue Code taxes an individual's transfer of property by gift during the calendar

ORDER – 6

year. 26 U.S.C. § 2501(a)(1). The value of the gift for tax purposes is the value on the date of transfer. *Id*. § 2512(a). "The gift tax applies to a transfer by way of gift whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." Treas. Reg. (26 C.F.R.) § 25.2511-1(a); *see also* 26 U.S.C. § 2511. Additionally, "any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed, constitutes a gift subject to tax." Treas. Reg. (26 C.F.R.) § 25.2511-1(c)(1). Further, "[d]onative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer. The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor." *Id*. § 25.2511-1(g)(1).

### 2. Indirect Gifts to Partners

The Treasury Regulations illustrate that a shareholder of a corporation may be deemed to have made an indirect gift to the other shareholders of the corporation by transferring property to the corporation. *See* Treas. Reg. (26 C.F.R.) § 25.2511-1(h)(1) (explaining that where B transfers property to a corporation, the transfer is generally deemed to represent gifts by B to the other shareholders of the corporation to the extent of their proportionate interests in the corporation). "Similarly, if a partner transfers property to a partnership for less than adequate consideration, the transfer generally will be treated as an indirect gift by the transferor to the other partners." *Gross v. Comm'r*, 96 T.C.M. (CCH) 187 (2008) (*citing Shepherd v. Comm'r*, 115 T.C. (RIA) 376, 389 (2000), *aff'd by* 283 F.3d 1258 (11th Cir. 2002)). The following cases, delineating the contours of this principle, provide helpful background for resolution of the instant dispute.

### i. *Shepherd*

In *Shepherd v. Commissioner*, the tax court held that, for gift tax purposes, the taxpayer's transfers of certain real estate and stock into a family partnership of which the taxpayer was a 50% owner and his two sons were 25% owners represented indirect gifts to each of his sons of undivided

ORDER – 7

25% interests in the land and in the stock. 115 T.C. at 389. The taxpayer in that case had executed a family partnership agreement, which became effective the day after he executed two deeds purporting to transfer land interests to the partnership. *Id*. at 379, 381. Approximately a month later, the taxpayer also transferred stocks to the partnership. *Id*. at 381. On his gift tax return, the taxpayer discounted the value of the transferred stock based on the minority interests passed to the partnership and therefore reported no gift tax due. *Id* at 382.

In concluding that the taxpayer's transfers to the partnership constituted indirect gifts to his sons, the court recognized that "a transfer to a partnership for less than full and adequate consideration may represent an indirect gift to the other partners." *Id*. at 389 (*citing Gross v. Comm'r*, 7 T.C. 837 (1946)). The court explained that:

> Obviously, not every capital contribution to a partnership results in a gift to the other partners, particularly where the contributing partner's capital account is increased by the amount of his contribution, thus entitling him to recoup the same amount upon liquidation of the partnership.

*Id*. In that case, however, the taxpayer's contributions of property were allocated to his and his sons' capital accounts according to their respective shares. *Id*.

The Eleventh Circuit affirmed. 283 F.3d 1258 (11th Cir. 2002). The court distinguished that case from the hypothetical scenario in which a taxpayer completed a transfer of land to a partnership in which the sons were not partners and then established the partnership interests of the sons, "which would result in a gift of a partnership interest" as opposed to an indirect gift of land. *Id*. at 1261.

### ii.    *Estate of Jones*

In *Estate of Jones v. Commissioner*, the tax court distinguished *Shepherd* on grounds that the taxpayer therein contributed property to family partnerships that were completely reflected in the capital accounts of the taxpayer and, therefore, "the value of the other partners' interests was not enhanced by the contributions." 116 T.C. 121, 128 (2001). As such, the taxpayer's same-day contribution of property to the family partnerships and transfer of partnership interests to the children were not treated as an

ORDER – 8

indirect gift of property to the children. *Id*.; *see also Gross*, 96 T.C.M. at 187 (finding that a taxpayer's contributions of securities to a partnership were reflected in her capital account, the value of her daughters' capital accounts was not enhanced because of the contributions, and therefore her subsequent transfer of interests in the partnership to her daughters was not an indirect gift of securities to her daughters).

### iii. *Senda*

In *Senda v. Commissioner*, the taxpayers, with the advice of their tax attorney, set up a plan to form a family limited partnership as a vehicle to hold investment assets and to serve as a means of making gifts to their children. T.C.M. (RIA) 2004-160, 2004 WL 1551275, at *1 (2004), *aff'd by* 433 F.3d 1044 (8th Cir. 2006). On April 1, 1998, they signed a family limited partnership agreement. *Id*. On June 3, 1998, the secretary of state issued a certificate of limited partnership. *Id*. On December 28, 1998, the taxpayers contributed shares of stock to the partnership. *Id*. at *2. On that same day, taxpayers gave to each child's trust a minority partnership interest in the family limited partnership. *Id*. The certificates of ownership reflecting these transfers were not prepared and signed until several years later. *Id*.

When the taxpayers wished to transfer additional property in partnership form to the children, their attorney advised that they form a second family limited partnership. *Id*. On December 2, 1999, the secretary of state issued a certificate of limited partnership for the second partnership. *Id*. On December 20, 1999, the taxpayers contributed shares of stock to the second partnership. *Id*. at 3. On that same day, the taxpayers gave to each child's trust a minority interest in the second partnership. *Id*. The certificates of ownership memorializing these transfers were not prepared and signed until several weeks after the transfers. *Id*. The taxpayers' gift tax returns for those years reflected discounted values of the partnership interests transferred to the children. *Id*.

The tax court found that the transfers of securities to the partnerships were similar to the transfer of assets in *Shepherd*. *Id*. at *5. The value of the children's partnership interests was deemed to have been enhanced by the parents' contributions of stock to the partnerships. *Id*. The court noted that unlike

ORDER – 9

in *Estate of Jones*, where all of the taxpayer's contributions were properly reflected in the capital accounts of the taxpayer, it was unclear whether the taxpayers' contributions in *Senda* were ever reflected in their capital accounts. *Id*. The court found that the taxpayers did not show what the partnership ownership interests were immediately before the funding of the partnerships or how the contributed stock was allocated among the partners' capital accounts at the time of the funding. *Id*. at *6. In addition, the court found that the taxpayers "were more concerned with ensuring that the beneficial ownership of the stock was transferred to the children in tax-advantaged form than they were with the formalities of [family limited partnerships]." *Id*. The court also found that the taxpayers had "presented no reliable evidence that they contributed stock to the partnerships before they transferred the partnership interests to the children. At best, the transactions were integrated . . . and, in effect, simultaneous." *Id*. On that record, the tax court found that the transfers of stock were indirect gifts of the stock to the children for gift tax purposes. *Id*. at *7.

The Eighth Circuit affirmed. 433 F.3d at 1044. With respect to the tax court's finding that the taxpayers presented no reliable evidence that they contributed the stock to the partnerships before they transferred the partnerships to the children, the court explained that the "sequence is critical, because a contribution of stock *after* the transfer of partnership interests is an indirect gift to the partners (to the extent of their proportionate interest in the partnership)." *Id*. at 1046. The court held that it was not error for the tax court to disregard as unreliable after-the-fact documents purporting to show that the taxpayers contributed stock before transferring the partnership interests. *Id*. at 1047.

The Eighth Circuit also held that even if the taxpayers' contributions of stock had been properly reflected in their capital accounts before the gifting, "this formal extra step does not matter" because, under the step transaction doctrine, "formally distinct steps are considered as an integrated whole, rather than in isolation, so federal tax liability is based on a realistic view of the entire transaction." *Id*. at 1048. The court recognized that the "step-transaction doctrine is 'impliedly included in the gift tax statute itself.'" *Id*. (*quoting Sather v. Comm'r*, 251 F.3d 1168, 1174 (8th Cir. 2001)). The Eighth Circuit

ORDER – 10

affirmed the tax court's finding that the transactions were integrated and simultaneous and that, in effect, they were "integrated steps in a single transaction." *Id.* at 1049.

## III.   DISCUSSION

The Government does not argue that Plaintiffs' contribution of *real estate* to Family LLC in December 2001 and subsequent gifting of partnership interests to the children's trusts on January 11, 2002, or thereafter, should be regarded as indirect gifts of real estate to the children. However, the Government does argue that Plaintiffs' contribution of *cash* to Investments LLC on January 11, 2002, should be regarded as indirect gifts of cash to the children's trusts. Specifically, the Government argues that, like the taxpayers in *Senda*, Plaintiffs cannot establish that they contributed the assets to the entity before they gifted the minority interests in the entity to their children. (Def.'s Mot. 13 (Dkt. No. 11).) Alternatively, the Government argues that the transfer of cash to Investments LLC and the gifting of the Family LLC units were "nothing more than integrated transactions under the step transaction doctrine[.]" (*Id.*)

Plaintiffs cross-move for partial summary judgment, arguing that:

> no indirect gift occurred because: (1) the gifting documents were not executed until after the contribution of securities to the LLC, probably not even on the same day; (2) even if the gifting documents were executed on the same day as the contribution, the gift was not complete until delivery to the trustees; (3) and even if the contribution and gift were 'simultaneous,' the capital accounts and the donor's intent control, both of which indicate that the contribution occurred before the gift.

(Pls.' Mot. 5 (Dkt. No. 26).)

The Government also argues that Plaintiffs' allegations in this lawsuit that they gifted the LLC units after January 11, 2002, should be disregarded because: (1) they never presented these allegations to the IRS in their claims for refunds and as such, the rule of variance now bars them; (2) the parol evidence rule prohibits the use of extrinsic evidence to contradict the terms of the LLC assignment documents; and (3) such new claims are barred by the duty of consistency, which entitles the IRS to rely upon the form in which taxpayers themselves cast a transaction. (Def.'s Mot. 14 (Dkt. No. 11).)

ORDER – 11

The Court will address these arguments, in turn, below.

## A. The Sequence of Transfers

As summarized in the background section above, it is undisputed that Plaintiffs transferred the cash to Investments LLC on January 11, 2002. (Pls.' Mot. 5–6 (Dkt. No. 26); Schwab Account Statement for Investments LLC (Dkt. No. 12-23 at 5).) The Court must determine whether Plaintiffs, as the taxpayers with the burden to prove entitlement to a refund, can demonstrate that they gifted the LLC units to the children subsequent to January 11, 2002.[1]

There is a plethora of evidence to the contrary. For example, the LLC assignment documents, which both Plaintiffs signed, specifically state that the assignments are "to be effective on January 11, 2002" and that the assignment documents themselves were "executed" that day. (Assignment to R.H. (Dkt. No. 12-22 at 2); Assignment to J.H. (Dkt. No. 12-22 at 3).) When Mr. Heckerman received the unsigned LLC assignment documents from his attorney on January 11, 2002, at 8:51 a.m. via email attachment, the email chain made clear that the attorney "made the gifts effective January 11th." (1/11/02 Email (Dkt. No. 12-24).) In addition, the document entitled "Admission to Heckerman Family Limited Liability Company as Substituted Member," signed by both Plaintiffs and submitted to the IRS, states that the children's trusts were "admitted to the Limited Liability Company as Members with respect to the Interests assigned to them, effective January 11, 2002." (Dkt. No. 12-27 at 2.) Further, the gift tax returns, signed by Plaintiffs and submitted to the IRS in 2003, state under penalty of perjury that

---

[1]Plaintiffs assert, without citing any evidence, that the cash transfer took place during "business hours" of January 11, 2002. (Pls.' Mot. 6 (Dkt. No. 26).) Plaintiffs additionally assert that because Mrs. Heckerman did not work with Mr. Heckerman, where he received the unsigned gifting documents by email, the earliest that they both could have signed the gift documents would have been when Mr. Heckerman returned from work in the evening of that day. (*Id.*) Based on those assumptions, Plaintiffs argue that even if the cash transfer and gifting of LLC units took place the same day, the cash transfer occurred first. However, the objective evidence of the cash transfer shows only that the transfer occurred at an unspecified time on January 11, 2002. (Schwab Account Transaction Detail (Dkt. No. 12-23 at 5).) Therefore, the Court is not persuaded that Plaintiffs can establish that, even if the transactions happened on the same day, the gifting of LLC units took place subsequent to the cash transfer.

ORDER – 12

the date of the gifts was January 11, 2002. (Dkt. No. 12-33 at 10, Dkt. No. 12-34 at 10.)

Moreover, the valuation expert had informed Mr. Heckerman that he needed "the valuation date (typically the gift transfer date)" in order to complete the valuation of Heckerman Family LLC for gift tax purposes, (12/10/01 Email (Dkt. No. 12-28 at 2)), presumably recognizing that the value of a gift for tax purposes is the value on the date of transfer. *See* 26 U.S.C. § 2512(a). Significantly, on January 23, 2002, Mr. Heckerman stated in an email to the valuation expert that "[t]he cash gift was made the[] same day as the funding of the securities LLC." (1/23/02 Email (Dkt. No. 22 at 9).) The next day, the valuation expert sent Mr. Heckerman an email confirming that he used January 11, 2002, as the valuation date for the draft appraisal. (1/24/02 Email (Dkt. No. 12-31).) There is no evidence that Mr. Heckerman objected to the assumption that January 11, 2002, was the correct valuation date, especially given that the final appraisal report of February 6, 2002, uses the same valuation date. (Dkt. No. 12-32 at 2–3.) Finally, even in Plaintiffs' claims for refund, filed in 2007, Plaintiffs asserted that "on January 11, 2002, or thereafter, each taxpayer gifted 1,217.65 units of Family LLC to their children's trusts." (Claims for Refund (Dkt. Nos. 1-2 at 2, 1-3 at 2).)

Despite this overwhelming evidence that the date of the gifts was January 11, 2002, in this litigation, Plaintiffs attempt to create an issue of material fact as to the timing of the gifts of LLC units to the children's trusts with testimony from Mr. Heckerman asserting that Plaintiffs probably did not sign the assignment documents until after January 11, 2002. (D. Heckerman Decl. ¶ 10 (Dkt. No. 20 at 2); D. Heckerman Dep. 99:2–8 (Dkt. No. 12-3 at 30).) They also argue that the gifts to the trusts were not actually complete when the assignments were signed, but rather were complete only upon delivery to the trustees, at some unspecified date after January 11, 2002. (Pl.'s Mot. 12 (Dkt. No. 26).)

The Court is not persuaded that Plaintiffs may create a genuine issue of material fact as to the timing of the gifts with Mr. Heckerman's own self-serving statements, made during the course of this litigation, that contradict the express objective evidence. *See Mays*, 763 F.2d at 1297 (stating that a tax refund "claim must be substantiated by something other than tax returns, uncorroborated oral testimony,

ORDER – 13

or self-serving statements."). Even if the Court accepted this parol evidence that contradicts the express terms of the gifting documents, at best, Mr. Heckerman has stated that there is a *possibility* that he signed the documents later than January 11, 2002, though he does not specifically remember when he did sign the documents. (D. Heckerman Decl. ¶ 10 (Dkt. No. 20 at 2).) Mrs. Heckerman does not recall when she signed the agreements. (S. Heckerman Dep. 19:9–25 (Dkt. No. 12-14 at 10).) The Court finds as a matter of law that this evidence is not enough to create a genuine issue of fact. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

Further, even if Plaintiffs signed the gift documents after January 11, 2002, they expressly made them *effective* as of that date and treated them as such, including in their gift tax returns in 2003. It is obvious to the Court that Plaintiffs' position as to the effective date of the gifts changed in hindsight during the course of this litigation. Plaintiffs may not now avoid summary judgment by arguing that their gifts of LLC units were not actually effective until the trustees received the assignment documents in the mail because Plaintiffs did not present this argument in their refund claims during the administrative process. Under the rule of variance, the Court lacks subject matter jurisdiction over claims that have not been presented in the refund process. This rule is based on the provision that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary" of the Treasury. 26 U.S.C. § 7422(a). That refund claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). As the Ninth Circuit has explained:

> These requirements ensure that the IRS is given adequate notice of each claim and its underlying facts, so that the IRS may conduct an administrative investigation and determination. They also allow the IRS to correct any errors that may have been made

ORDER – 14

and limit the scope of refund litigation to issues the IRS has examined and is willing to defend. Compliance with these specificity requirements is a prerequisite to subject matter jurisdiction over a claim for a refund. "[I]n the absence of waiver by the government, the taxpayer cannot recover in its suit for refund on a different ground than set forth in the claim for refund."

*Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999) (internal citations omitted) (*quoting Bear Valley Mut. Water Co. v. Riddell*, 493 F.2d 948, 950–51 (9th Cir. 1974)). "If the claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Boyd v. United States*, 762 F.2d 1369, 1372 (9th Cir. 1985).

Plaintiffs' claims for refund did not argue that the gifting of the LLC units was not effective until delivery to the trustees, or otherwise specifically dispute the timing of the LLC unit gifts. (*See* D. Heckerman Claim (Dkt. No. 1-2); S. Heckerman Claim (Dkt. No. 1-3).) Arguing to the contrary, Plaintiffs point to following language in the "Facts" sections of their administrative claims:

In January 2002, the taxpayers transferred $2,850,000 from an investment account with Charles Schwab and Co., Inc. ("Schwab"), to a Schwab account owned by Investments LLC. Subsequent to the transfer to Investments LLC, on January 11, 2002, or thereafter, each taxpayer gifted 1,217.65 units of family LLC to their children's trusts.

(*Id.*) The Court does not view this language as on its face calling for investigation of the question whether, contrary to the express language of the assignment documents and various other objective evidence, the gifts of LLC units were actually made on a date later than January 11, 2002. Rather, this language indicates that Plaintiffs accepted that they had gifted the units on January 11, 2002, or thereafter. If it was Plaintiffs' position in the refund claims that the gifts were not made until "sometime well after January 11, 2002," (Pls.' Reply 5 (Dkt. No. 29)), then they would not have included January 11, 2002, in the realm of possible dates on which each taxpayer gifted the LLC units. Although the word "[s]ubsequent" indicates that Plaintiffs' position in the refund claims was that the money transfer preceded the gifting of LLC units, the phrasing suggests that it was the money transfer at some unspecified date in "January 2002" that took place before January 11, 2002. Nothing in the refund claim apprised the IRS that it needed to investigate whether the gifts of LLC units were ineffective as of

ORDER – 15

January 11, 2002. The sole grounds upon which Plaintiffs requested refunds were that (1) they made no gift of cash to the children's trusts, only of LLC units; and (2) the fair market value of the gifted units was no greater than that reported on the gift tax returns. (D. Heckerman Claim (Dkt. No. 1-2); S. Heckerman Claim (Dkt. No. 1-3).) Therefore, the Court finds that Plaintiffs may not rely on the argument that the gifts were not effective until some date after January 11, 2002, in this refund suit. *See, e.g.*, *Trantina v. United States*, 381 F. Supp. 2d 1100, 1104 (D. Ariz. 2005) (explaining that "failure to file a claim for a refund which specifies 'all grounds and supporting facts upon which a claim for refund is based' deprives the Court of jurisdiction over any claims not pursued before the IRS."). Accordingly, Plaintiffs cannot carry their burden at trial of proving by reliable evidence that they contributed the cash to Family LLC before they gifted the LLC units to the children's trusts.

Nor is the Court persuaded that Plaintiffs can establish that their capital accounts were increased by the amount of their contributions to Investments LLC at the time of the transfer, thus entitling them to recoup the same amount upon liquidation of the entity. *See Shepherd*, 115 T.C. at 389; *Senda*, 2004 WL 1551275, at *6. Plaintiffs' attorney stated in a letter to the IRS that "no initial capital contribution, the [Charles Schwab mutual fund] account or otherwise, was designated in the LLC operating agreement; and . . . no contemporaneous capital accounts were maintained reflecting the account as an asset of the LLC." (Apr. 27, 2006 Hallett letter (Dkt. No. 12-37 at 5).) Although Plaintiffs point to a declaration by their accountant stating that at the time Plaintiffs' 2002 tax returns were prepared, their capital accounts were adjusted to reflect the activity that had occurred that year, (Coles Decl. (Dkt. No. 19)), that does nothing to show that at the time of the transfer, Plaintiffs' capital accounts reflected their contributions and therefore the transfer did not enhance the value of the children's capital accounts. As such, the Court finds the gifts in this case similar to *Senda* and unlike the gifts in *Estate of Jones*.

**B.**     **Step Transaction Doctrine**

The Court is also persuaded by Defendants' alternative argument that, like the transactions in *Senda*, the transfer of cash to Investments LLC and the gifting of the Family LLC units to the children's

ORDER – 16

trusts were, at best, integrated and, in effect, simultaneous.

"The 'step-transaction' doctrine collapses 'formally distinct steps in an integrated transaction' in order to assess federal tax liability on the basis of a 'realistic view of the entire transaction.'" *Brown v. United States*, 329 F.3d 664, 671 (9th Cir. 2003) (*quoting Comm'r v. Clark*, 489 U.S. 726, 738 (1989)). "As such, the doctrine is part of the 'broader tax concept that substance should prevail over form.'" *Id.* (*quoting Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517, 1521 (10th Cir. 1991)). The step-transaction doctrine "is 'impliedly included in the gift tax statute itself.'" *Senda*, 433 F.3d at 1048 (*citing Sather v. Comm'r*, 251 F.3d 1168, 1174 (8th Cir. 2001)). The Ninth Circuit has recognized the need to balance this doctrine with the competing principle that "anyone may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose the pattern which will best pay the Treasury." *Brown*, 329 F.3d at 671 (*quoting Grove v. Comm'r*, 490 F.2d 241, 242 (2d Cir. 1973)). Recognizing this tension, the Ninth Circuit has "attempt[ed] to distinguish between legitimate 'tax avoidance'—actions which, although motivated in part by tax considerations, also have an independent purpose or effect—and illegitimate 'tax evasion'—actions which have no, or minimal, purpose or effect beyond tax liabilities." *Id.* (*citing Stewart v. Comm'r*, 714 F.2d 977, 987–88 (9th Cir. 1983)).[2] The court also looks to "whether the facts presented 'fall within the intended scope of the Internal Revenue provision at issue.'" *Id.* at 672 (*citing Stewart*, 714 F.2d at 988).

Applying these principles here, the Court finds that the two-step transaction of transferring the $2.85 million in cash to Investments LLC and the gifting of the LLC units to the children's trusts is properly characterized as an integrated transaction in which Plaintiffs indirectly gifted the cash to the children's trusts. The gift tax provision is broad and explicitly includes indirect gifts to shareholders

---

[2]The Ninth Circuit has "distinguished between a taxpayer's right to choose '[b]etween two equally direct ways of achieving the same result' the method 'which entailed the most tax advantages' and the inability to 'secure by a series of contrived steps, different tax treatment than if he had carried out the transaction directly.'" *Id.* at 675 (*quoting Magneson v. Comm'r*, 753 F.2d 1490, 1497 (9th Cir. 1985)).

within its intended scope. *See* Treas. Reg. (26 C.F.R.) § 25.2511-1(h)(1). The Court finds that the facts presented here involve indirect gifts of cash to the children's trusts.

As Judge Zilly recently explained in an order resolving similar "indirect gift" issues in another tax case in this district, *see* C08-0227-TSZ, *Linton v. United States*, "[n]o specific standard has been universally applied in assessing whether a number of separate steps or activities should be viewed as comprising one transaction; however, courts have generally used one of three alternative tests: (i) the 'binding commitment' test; (ii) the 'end result' test; and (iii) the 'interdependence' test." (C08-0227-TSZ (Dkt. No. 44 at 16).) Judge Zilly distinguished between these tests as follows:

> The binding commitment test, which is the narrowest alternative, collapses a series of transactions into one "if, at the time the first step is entered into, there was a binding commitment to undertake the later step." [*Penrod v. Comm'r*, 88 T.C. 1415, 1429 (1987).] The end result test stands at the other extreme and is the most flexible standard, asking whether the "series of formally separate steps are really pre-arranged parts of a single transaction intended from the outset to reach the ultimate result." *Id*. The interdependence test inquires whether, "on a reasonable interpretation of objective facts," the steps were "so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series" of transactions. [*Cal-Maine Foods, Inc. v. Comm'r*, 93 T.C. 181, 199 (1989)]; *Penrod*, 88 T.C. at 1430. The interdependence test focuses on the relationships between the steps, rather than on their end result. *Penrod*, 88 T.C. at 1430. The question is whether "any one step would have been undertaken except in contemplation of the other integrating acts." *Cal-Maine Foods*, 93 T.C. at 199.

(C08-0227-TSZ (Dkt. No. 44 at 16).)

The Court is satisfied that both the end result test and the interdependence test are met here. The end result test is met because Plaintiffs clearly had a subjective intent to convey property to their children while minimizing their tax liability, pursuant to which they crafted, with the help of their attorneys and advisors, a scheme consisting of "pre-arranged parts of a single transaction[.]" *Penrod*, 88 T.C. at 1429. Such intent is evident in Mr. Heckerman's testimony that he and his wife "wanted to fund the LLCs in such a way that would not trigger a gift tax." (*Id*. at 76:2–3.) The pre-arrangement is made abundantly clear throughout the record, but in particular in an October 9, 2001, email from Plaintiffs' financial advisor Randy Coles to Mr. Heckerman, which explains the basic features of the "strategy"

ORDER – 18

that Plaintiffs would soon thereafter attempt to put into effect:

> . . . when you place your funds into the LLC, no gift is being made (and therefore no utilization of your unified credit). At that time, effectively you own 100% of an entity that now owns the $4,000,000 of assets you have contributed. The gift for IRS purposes is made when you gift ownership in the LLC to the kids or their trusts. For example, say you put $4,000,000 into the LLC. Immediately after, you own 100% of the LLC. You then may choose to gift 25% of the ownership in the LLC (not a gift of the assets the LLC holds) to each of the kids. Since we are using the LLC (and the resultant discounts), even though the combined 50% of the assets is $2,000,000, for gift taxes the IRS only considers the gift to be of $1,350,000. This gift of the LLC ownership is where you and your spouse's $675,000 exemptions are used. To get the remaining ownership of the LLC to your kids or their trusts, you will make gifts of LLC ownership equal to $20,000 (again grossed up for the discounts) to each child every year.

(10/9/01 Email (Dkt. No. 12-5 at 2).) In addition, the interdependence test is met because it is clear from the record that but for the anticipated discount in calculating gift taxes, based on the low market appeal of Family LLC's structure, Plaintiffs would not have transferred the cash into Investments LLC. This is most apparent in a December 2001 email chain in which Mr. Heckerman explained to his advisors that he would determine how much cash to transfer into the LLC based on the size of the tax advantage: "[r]egarding the securities LLC, once I know how much discount I can get as a function of how much value is in this LLC, I will determine the funding of this LLC." (Dkt. No. 12-8 at 3.)

Although the Court does not find that the binding commitment test is met here, as there is no evidence that Plaintiffs had a legal commitment either to transfer the cash or carry out the gifting of the LLC units, the Ninth Circuit has not insisted that the binding commitment test be met before applying the step transaction doctrine. *See Brown*, 329 F.3d at 672–73 (explaining that "there is ample authority for linking several prearranged or contemplated steps, even in the absence of a contractual obligation or financial compulsion to follow through"). In addition, some other courts have limited the binding commitment test to situations, unlike this one, involving series of transactions that occurred over a substantial period of time. *See Cal-Maine Foods*, 93 T.C. at 198–99 (*citing Redding v. Comm'r*, 630 F.2d 1169, 1175 (7th Cir. 1980); *Security Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1245 (5th Cir. 1983)); *see also King Enters., Inc. v. United States*, 418 F.2d 511, 518 (Ct. Cl. 1969) (explaining that

ORDER – 19

"the step transaction doctrine would be a dead letter if restricted to situations where the parties were bound to take certain steps" because "[g]eneral application of the binding commitment requirement would effectively insure taxpayers of virtual exemption from the doctrine merely by refraining from such commitments."). The Court is persuaded that, given that the end result test and interdependence test are met, the general characterization of the transaction as stepped together is correct as a matter of law, and the Government properly "assess[ed] federal tax liability on the basis of a 'realistic view of the entire transaction.'" *Brown*, 329 F.3d at 671 (*quoting Clark*, 489 U.S. at 738).

Plaintiffs argue that there is no principled distinction between this case and two recent tax court cases, *Holman v. Commissioner*, 130 T.C. 12 (2008), and *Gross v. Commissioner*, 96 T.C.M. at 187, in which the court declined to apply the step transaction doctrine in circumstances involving gifts of family partnership units. (Pls.' Mot. 19 (Dkt. No. 26).) However, in those cases, six days and eleven days, respectively, passed between the transfer of the securities at issue and the gifting of partnership interests, and the court found that during that time, the taxpayers bore a real economic risk that the value of the partnership units could change, given the volatile nature of the underlying securities. *See Holman*, 130 T.C. at 189–91; *Gross*, 96 T.C.M. at 187. The Court finds this case distinguishable from *Holman* and *Gross*. First, in contrast to the taxpayers in those cases, and like the plaintiffs in *Linton*, Plaintiffs here did not make affirmative decisions to delay the gifts for some period of time after funding. Rather, with the benefit of hindsight, knowing the date on which the funds were transferred to the LLC, Plaintiffs have changed their position as to the timing of the gifts so as to achieve favorable tax consequences. Second, Plaintiffs have not established that they bore any real economic risk that the LLC units would change in value between any alleged time intervening between the funding and the gifting, given the nature of the assets transferred to Investments LLC. As such, neither *Holman* nor *Gross* prevent application of the step transaction doctrine in this case.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment on

ORDER – 20

the Issue of Indirect Gift (Dkt. No. 11) and DENIES Plaintiffs' Motion for Partial Summary Judgment on the Issue of "Indirect Gift" (Dkt. No. 26). The parties are DIRECTED to notify the Court after their mediation of the status of the remaining issues and whether a trial is necessary to resolve this case.

DATED this 27th day of July, 2009.



John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 21